UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 00-778 (DSD/JMM)

FleetBoston Robertson Stephens,
Inc. (formerly BancBoston Robertson
Stephens), a Massachusetts
corporation,

        Plaintiff,

v.

**ORDER**

Innovex, Inc., a Minnesota
corporation, and AdFlex Solutions,
Inc., a Delaware corporation,

        Defendants.


    Karen E. Wilson, Esq., David J.F. Gross, Esq. and Faegre & Benson, 2200 Norwest Center, 90 South Seventh Street, Minneapolis, MN 55402, counsel for plaintiff.

    Terrence J. Fleming, Esq., Kim Ruckdschel-Haley, Esq. and Lindquist & Vennum, 4200 IDS Center, 80 South Eighth Street, Minneapolis, MN 55402, counsel for defendants.


    This matter is before the court on defendants' motion to stay litigation and compel arbitration [Docs. Nos. 3 and 7]. Based on a review of the file, record, and proceedings herein, the court denies defendants' motion.


## BACKGROUND

    Plaintiff FleetBoston Robertson Stephens Inc. ("Robertson Stephens" or "plaintiff") is a multi-service brokerage firm which

FILED   **OCT 31 2000**
FRANCIS E. DOSAL, CLERK
Judgment Ent'd. _____
Deputy Clerk's Initials _____

provides investment banking and financial advisory services to its customers. It is a member of the National Association of Securities Dealers ("NASD"). Defendant AdFlex Solutions, Inc. ("AdFlex") is a manufacturer of electronic components. On June 7, 1999, the parties contracted for Robertson Stephens to provide AdFlex with "financial advice and assistance" concerning AdFlex's possible merger with another business. The agreement did not call for Robertson Stephens to act as broker for AdFlex securities. (Wilson Aff., Exh. A).

AdFlex merged with defendant Innovex in September 1999. Robertson Stephens sent AdFlex an invoice for services rendered dated September 23, 1999. AdFlex declined to pay on the grounds that Robertson Stephens had not fulfilled its contractual obligations.

On March 29, 2000, Robertson Stephens filed suit in federal district court for breach of contract, naming AdFlex and Innovex as defendants. Defendants now move to stay litigation and compel arbitration. The motion is based on the NASD Code of Arbitration Procedure, which allows a customer of an NASD member to demand arbitration of any dispute. Robertson Stephens contends that the NASD arbitration provisions do not apply in this case.

**DISCUSSION**

## I. Authority to Determine Arbitrability

"[T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985); see also AT&T Techs., Inc. v. Communications Workers of America, 475 U.S. 643, 648 (1986) (holding that courts generally decide arbitrability). It is only where the parties "clearly and unmistakably provide otherwise" that the court's jurisdiction over the issue of arbitrability is questioned. AT&T, 475 U.S. at 649.

The contract at issue does not contain an arbitration clause. However, defendants assert that Robertson Stephens, as an NASD member, has agreed that the NASD Code governs all disputes between NASD members and their customers. Defendants further note that under the NASD rules, the determination of arbitrability is committed to the arbitrator. Consequently, defendants argue that this court lacks jurisdiction to decide the issue of arbitrability.

Although Section 10324 of the NASD Uniform Code of Arbitration provides that "arbitrators shall be empowered to interpret and determine the applicability of all provisions under this Code," the court disagrees that Robertson Stephens has in any way agreed that this dispute is subject to the NASD's arbitration provisions. The central issue in this case is whether defendant AdFlex is a

3

"customer" of Robertson Stephens under the NASD rules and is thereby entitled to demand arbitration of the fee dispute. Since the answer to that question is not obvious, it cannot be said that Robertson Stephens "clearly and unmistakably" agreed that the NASD code governs this dispute. Arbitrability is properly decided by this court.

## II. Arbitrability of the Dispute

The NASD Uniform Code of Arbitration provides that:

> Any dispute, claim, or controversy eligible for submission under the Rule 10100 Series between a customer and a member and/or associated person arising in connection with the business of such member or in connection with the activities of such associated persons shall be arbitrated under this Code, as provided by any duly executed and enforceable written agreement or upon the demand of the customer.

NASD Code, § 10301 (a). The "Rule 10100 Series," also called the NASD Code of Arbitration Procedure, deems eligible for arbitration "any dispute, claim or controversy arising out of or in connection with the business of any member of the Association" when such controversy is "between or among members or associated persons and public customers, or others." NASD Code, § 10101. The two rules together thus provide that a controversy shall be arbitrated if one party is a NASD member, the other party is either a "customer" or an "associate" of the member, the controversy arises in connection with the business of the member, and arbitration is either provided by written agreement or demanded by the "customer." See NASD Code,

4

§§ 10101, 10301. Further, the party seeking arbitration must not have waived its right to arbitration. See <u>Ritzel Communications, Inc. v. Mid-American Cellular Tel. Co.</u>, 989 F.2d 966, 969 (8th Cir. 1993); <u>Stifel, Nicolaus & Co. v. Freeman</u>, 924 F.2d 157, 158 (8th Cir. 1991).

The parties here do not dispute that Robertson Stephens is an NASD member, that AdFlex is not an associate of Robertson Stephens, that the controversy arises in connection with the business of Robertson Stephens, that the contract does not contain an arbitration provision and that AdFlex has not waived any right to arbitration it may have had. Therefore, the issue before the court is whether AdFlex is a customer of Robertson Stephens as contemplated by the NASD rules.

The NASD provisions governing arbitrability do not specifically define "customer." The rules define only what a customer is not: the term customer shall not include a "broker or dealer." NASD Code § 0120(g). However, an NASD rule governing disclosure by members of customer records defines "customer" as "any person, who, in the regular course of such member's business, has cash or securities in the possession of such member." This definition suggests that the NASD views the term "customer" to include only those individuals who use the NASD member's broker/dealer services. This interpretation is supported by federal securities law.

5

Federal statutes governing the securities industry bear significantly on the scope of the NASD rules. The Securities and Exchange Act of 1934 (the Act), as amended, governs the Securities and Exchange Commission (SEC), which in turn oversees the NASD. See 15 U.S.C. § 78a et seq.; Punitive Damages in Securities Arbitration: An Undue Process, Bradford D. Kaufman and Anne Tennant Cooney, 958 PLI/Corp 599, 648 (1996). The Supreme Court has explained the purpose of the 1934 Act and the related 1933 Securities Act:

> Federal regulation of transactions in securities emerged as part of the aftermath of the market crash in 1929. The Securities Act of 1933 (1933 Act), 48 Stat. 74, as amended, 15 U.S.C. s 77a et seq., was designed to provide investors with full disclosure of material information concerning public offerings of securities in commerce, to protect investors against fraud and, through the imposition of specified civil liabilities, to promote ethical standards of honesty and fair dealing. See H.R. Rep. No. 85, 73d Cong., 1st Sess., 1-5 (1933). The 1934 Act was intended principally to protect investors against manipulation of stock prices through regulation of transactions upon securities exchanges and in over-the-counter markets, and to impose regular reporting requirements on companies whose stock is listed on national securities exchanges."

Ernst & Ernst v. Hochfelder, 425 U.S. 185, 194-95 (1976).

The Act itself provides that in order to be certified by the SEC, an association such as the NASD must promulgate rules that "are designed ... in general, to protect investors and the public interest." 15 U.S.C. § 78o-3 (b)(6). The rules should not be

6

designed to "regulate ... matters not related to the purposes of this chapter or the administration of the association." Id. Moreover, "no registered securities association may deny membership to a registered broker or dealer by reason of ... the other types of business in which he is engaged." 15 U.S.C. § 78o-3(g)(3)(D)(4). These provisions in combination suggest that while NASD members may engage in activities outside the broker/dealer realm, the NASD rules shall not apply to those other activities and, by extension, to customers of those other activities.

This narrower view of the scope of NASD rules is consistent with case law interpreting the term "customer." While such cases have tended to expand the definition of "customer," all of the cases involved some type of investment relationship. See, e.g., Oppenheimer & Co. v. Neidhardt, 56 F.3d 352, 357-58 (2nd Cir. 1995) (holding that investors who had been defrauded by a representative of an NASD member firm, but who never opened formal accounts with that firm were customers of the firm for purposes of Section 10301); First Montauk Securities Corp. v. Four Mile Ranch Dev. Co., 65 F. Supp. 2d 1371, 1380-81 (S.D. Fla. 1999) (investor was a customer of an NASD member firm, where even though his account was maintained at another brokerage firm, a registered representative from the member firm managed the investor's account and the member firm realized profits from the investor's trades). Similarly, the NASD's own manual states that the NASD's arbitration forum operates

7

"[t]o assist in the resolution of monetary and business disputes between <u>investors</u> and their securities firms ..." (Wilson Aff., Exh. D)(emphasis added).

Defendant correctly emphasizes the federal policy favoring arbitration, and the court is well aware that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." See <u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 24-25 (1983). Moreover, the court notes that the SEC has recently approved an NASD rule change enlarging the scope of NASD arbitration. See 1998 WL 324581, *1 (S.E.C.) (expanding mandatory arbitration to claims involving government securities). However, it appears that the SEC approved the rule change only because Congress had recently amended the Act to expand the NASD's jurisdiction to include government securities. See <u>id.</u> at *2. The SEC indicated more generally that "the subject matter jurisdiction of the arbitration forum should not be significantly different from the NASD's regulatory jurisdiction over its members and associated persons." <u>Id.</u>

For these several reasons, the court declines to expand the term "customer" to include an entity who engages the financial advisory services of an NASD member. The relationship between Robertson Stephens and AdFlex does not fall within the scope of the NASD arbitration provision therefore defendants are not entitled to

8

invoke the NASD's mandatory arbitration provision. Defendants' motion to stay litigation and compel arbitration is denied.

## CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that defendants' motion to stay litigation and compel arbitration [Docs. Nos. 3 and 7] is denied.

Dated: October 31, 2000.

_____
David S. Doty, Judge
United States District Court